IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL AARON WITKIN,

    Petitioner,                       No. CIV S-10-0091 GEB DAD P

    vs.

JAMES A. YATES, Warden,         ORDER AND

    Respondent.               FINDINGS AND RECOMMENDATIONS

_____/

        Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. By this action, petitioner challenges a judgment of conviction entered against him in the Sacramento County Superior Court in 2005 for resisting an executive officer by use of force and violence in violation of California Penal Code § 69. This matter is now before the court on respondent's motion to dismiss the action as barred by the applicable statute of limitations.[1]

---

[1] On July 5, 2012, petitioner moved this court for an order requiring respondent to lodge the state court trial transcript relating to his 2005 conviction to assist this court in evaluating his equitable tolling based on actual innocence argument. For the reasons set forth herein, the court finds petitioner has not presented evidence sufficient to justify equitable tolling. The court also finds review of the statement of facts set forth in the opinion of the state court of appeals on petitioner's direct appeal sufficient to properly and adequately assess petitioner's claim of actual innocence under the standards applicable to such a claim. Accordingly, petitioner's motion will be denied.

1

PROCEDURAL BACKGROUND

This habeas action has a lengthy and complicated procedural history. On December 9, 2009, petitioner commenced this action by filing a petition for writ of habeas corpus in the United States District Court for the Central District of California (hereinafter "Central District"). On January 8, 2010, the Central District transferred the case to this court.

On January 29, 2010, this court issued findings and recommendations recommending dismissal of this habeas action as barred by the one year statute of limitations codified at 28 U.S.C. § 2244(d). (Doc. No. 10.) On February 22, 2010, petitioner filed objections to those findings and recommendations. (Doc. No. 11.) In those objections, petitioner argued that he was entitled to equitable tolling of the limitations period for the filing of a federal habeas application because he had received ineffective assistance of appellate counsel and because he was actually innocent of the resisting charge upon which he was convicted. (Id.) On June 17, 2010, this court vacated the January 29, 2010 findings and recommendations and directed respondent to file a response to the petition. (Doc. No. 14.)

On August 16, 2010, respondent moved to dismiss the pending federal habeas petition as time-barred. (Doc. No. 18.) By order filed October 18, 2010, the parties were directed by the court to file supplemental briefing addressing whether petitioner was in custody on his 2005 judgment of conviction at the time that he commenced this federal habeas action. (Doc. No. 21.) Both parties filed supplemental briefing as directed. In his supplemental brief, respondent added a request that this habeas action be dismissed for lack of jurisdiction, contending that petitioner was not in custody with respect to his 2005 judgment of conviction when this federal habeas action was filed. (Doc. No. 25.)

On December 20, 2010, this court issued an order finding, inter alia, that petitioner was, at the time this federal habeas action was filed, in custody pursuant to a 2009 judgment of conviction entered against him and that his sentence on that 2009 conviction had been enhanced by his 2005 conviction. (Doc. No. 29.) Good cause appearing, the court referred

the matter to the Office of the Federal Defender for the limited purpose of advising petitioner concerning issues related to second or successive petitions and granted petitioner forty-five days to request voluntary dismissal of this action without prejudice in light of that finding. (Id.) Thereafter, on January 21, 2010, the pro se petitioner filed supplemental briefing. (Doc. No. 30.) Petitioner did not, and has not, sought the voluntary dismissal of this action.

On February 11, 2011, the undersigned issued findings and recommendations recommending that this action be construed as a challenge to petitioner's 2009 conviction and sentence as enhanced by his 2005 conviction, that respondent's motion to dismiss be denied, and that respondent be granted an additional thirty days in which to either move to dismiss or answer the claims raised in the petition. (Doc. No. 30.) Petitioner filed objections to those findings and recommendations. (Doc. No. 32.) On March 10, 2011, the district court adopted the February 11, 2011 findings and recommendations in full. (Doc. No. 35.)[2]

On April 4, 2011, petitioner filed a motion for reconsideration of the assigned District Judge's March 10, 2011 order. (Doc. No. 39.) On April 5, 2011, respondent filed a motion to dismiss this action. (Doc. No. 38.) On April 7, 2011, petitioner filed a document styled as a motion for an order of contempt. (Doc. No. 41.) On May 2, 2011, petitioner filed a motion for an extension of time to file an opposition to respondent's motion to dismiss. (Doc. No. 43.) Petitioner filed his opposition to the motion to dismiss on May 9, 2011, an amendment to that opposition on May 13, 2011, and a second amendment to his opposition to the motion to dismiss on May 20, 2011. (Doc. Nos. 44, 46 & 48.) On October 13, 2011, petitioner filed a motion to supplement his opposition yet again. (Doc. No. 51.)

On September 15, 2011, petitioner filed a motion to amend his habeas petition. (Doc. No. 50.) Petitioner then filed a proposed first amended petition on November 18, 2011.

---

[2] On March 17, 2011, petitioner filed a motion for an extension of time to file amended objections to the findings and recommendations. (Doc. No. 36.) That motion was denied by the assigned District Judge on April 7, 2011. (Doc. No. 40.)

(Doc. No. 52.)  Finally, on November 28, 2011, petitioner filed a second motion for reconsideration of the assigned District Judge's March 10, 2011 order construing this action as a challenge to petitioner's 2009 judgment and sentence as enhanced by his 2005 conviction.  (Doc. No. 53.)

On December 14, 2011, this court issued an order and findings and recommendations in light of the new arguments being presented by petitioner in his various voluminous filings.  (Doc. No. 55.)  Therein, the court, inter alia, recommended that the district court granted petitioner's motions for reconsideration, vacate its March 10, 2011 order construing this action as a challenge to petitioner's 2009 judgment and sentence as enhanced by his 2005 conviction, and refer the matter back to the undersigned for further proceedings.  (Doc. No. 55 at 8.)  In those findings and recommendations, the court also indicated its intention, if the recommendation was adopted, to reconsider respondent's contention that petitioner's challenge to his 2005 conviction was time-barred and to set a supplemental briefing schedule.  Id. at 6-8.

On January 4, 2012, the assigned District Judge adopted the December 14, 2011 findings and recommendations in full.  The parties have now filed supplemental briefing on the question of the timeliness of the habeas petition pending before the court.

## ANALYSIS

Section 2244(d) of Title 28 of the United States Court contains a statute of limitations for filing a habeas petition in federal court:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing

4

     by such State action;

     (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

     (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

   (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244. The relevant chronology of this case is as follows:

   1. On June 29, 2005, petitioner was convicted of resisting an executive officer by use of force and violence in violation of California Penal Code § 69. (Lodged Doc. No. 1, Abstract of Judgment filed in Sacramento County Superior Court on Dec. 14, 2005.)

   2. On December 9, 2005, petitioner was sentenced to two years in state prison with respect to that conviction. (Id.)

   3. On November 14, 2006, petitioner was paroled from state prison. (Lodged Doc. No. 4, Chronological History Log.)

   4. On May 11, 2007, the California Court of Appeal for the Third Appellate District affirmed petitioner's judgment of conviction. (Lodged Doc. No. 2.) Petitioner did not seek review in the California Supreme Court.

   5. On or about September 5, 2008, petitioner signed and dated a petition for writ of habeas corpus to the California Supreme Court. (Lodged Doc. No. 3.) A certificate of service appended to the petition is dated October 23, 2008, and the petition was filed stamped in the state supreme court on October 24, 2008. (Id.) That petition was denied on December 10, 2008. (Lodged Doc. No. 4.)

/////

6. On December 9, 2008, petitioner filed a petition for writ of habeas corpus in the Sacramento County Superior Court. (Lodged Doc. No. 5.) That petition was denied by order dated January 21, 2009. (Lodged Doc. No.6.)

7. On December 7, 2009, petitioner signed and dated another habeas corpus petition to the California Supreme Court. (Lodged Doc. No.7.) The petition was file stamped in that court on December 14, 2009, id., and was denied on June 9, 2010. (Lodged Doc. No. 8.)

8. On or about December 9, 2009, petitioner filed[3] the instant federal habeas corpus action.

Petitioner's conviction became final on June 20, 2007, forty days after the California Court of Appeal affirmed his judgment of conviction. See Gaston v. Palmer, 417 F.3d 1030, 1033 (9th Cir. 2005). Respondent contends that the limitation period for the filing of a federal habeas petition began to run the next day, on June 21, 2007 and that it expired on June 20, 2008, prior to petitioner's filing of any state petition seeking collateral review of his 2005 conviction and sentence.

In his opposition to respondent's motion to dismiss, petitioner asserts that the limitation period for the filing of a federal habeas petition in his case did not begin to run until some time after September 21, 2009, when, he asserts, he discovered the "factual predicate" for his claims. (See Opposition to Motion to Dismiss filed Sept. 3, 2010 (Doc. No. 20), at 2-3.) Review of petitioner's opposition brief shows, however, that his contention in this regard is properly characterized as an assertion that he is entitled to equitable tolling for several reasons, including his appellate attorney's failure to timely inform him that his conviction had been affirmed on direct appeal, delays in receiving his legal material, and lack of knowledge of

---

[3] The federal petition was signed on December 9, 2009. It was lodged in the United States District Court for the Central District of California on December 14, 2009, and filed in that court on December 21, 2009. It was transferred to this court by order dated January 8, 2010. Pursuant to the mailbox rule announced in Houston v. Lack, 487 U.S. 266 (1988), this court deems December 9, 2009 as the date on which the instant federal habeas action was filed.

6

applicable principles of law together with delays in obtaining access to prison law libraries. See id. at 3-8. Petitioner's equitable tolling arguments will be addressed below.

Petitioner raises thirteen claims for federal habeas relief in the pending petition. The court considers the timeliness of each claim individually. See Mardesich v. Cate, 668 F.3d 1164, 1170-71 (9th Cir. 2012). Petitioner's first ten claims are claims that his trial counsel provided him ineffective assistance, the eleventh claim is that his trial counsel had an actual conflict of interest during his representation of petitioner, and the last two are claims of ineffective assistance rendered by his appellate counsel. All of petitioner's claims except the two claims of ineffective assistance of appellate counsel are based on facts known to petitioner at or before the time of his criminal trial in 2005. As to those eleven claims, the statute of limitations for the filing of a federal habeas petition began to run on June 21, 2007, forty days after the California Court of Appeal affirmed his judgment of conviction, see Patterson v. Stewart, 251 F.3d 1243, 1246 (9th Cir. 2001), and it expired on June 23, 2008.[4] Petitioner did not file any state habeas petition challenging his 2005 conviction and sentence during that one year period, cf. 28 U.S.C. § 2244(d)(2), and he did not file the instant federal habeas action until December 9, 2009. Accordingly, absent equitable tolling petitioner's first eleven claims presented in these proceedings are time-barred.

Petitioner's two claims that his appellate counsel provided him ineffective assistance are based on his appellate counsel's failure to raise claims of ineffective assistance of trial counsel on appeal. This court notes that on September 5, 2008, petitioner signed and dated the petition for writ of habeas corpus filed by him in the California Supreme Court on October 24, 2008. Included in that petition is a description of the issues that his appellate counsel raised on his behalf on direct appeal. (See Lodged Doc. 3 at 5.) In his opposition to respondent's

---

[4] Respondent contends the limitation period expired on June 21, 2008. This court finds that one year from June 21, 2007 was June 21, 2008, a Saturday, and, accordingly, that the limitation period for the filing of a federal habeas petition expired on the following Monday, June 23, 2008. See Fed. R. Civ. P. 6.

motion to dismiss, petitioner represents that he met with his appellate counsel in April 2007. (Doc. 20 at 3.) Petitioner also represents that he did not learn until October 19, 2008 that his conviction had been affirmed on direct appeal. (Id. at 6.) Since petitioner described the claims raised on direct appeal in the petition for writ of habeas corpus he signed on September 5, 2008, before he claims that he knew his conviction had been affirmed on appeal, this court finds that petitioner must have known by April 2007, when he states he met with his appellate counsel, what issues had and had not been raised on his behalf on direct appeal. A fortiori, all facts relevant to petitioner's claims of ineffective assistance of appellate counsel were known to him by April 2007. As noted above, the statute of limitations for his seeking of federal habeas relief began to run on June 21, 2007, and it expired on June 23, 2008, before petitioner filed any state post-conviction habeas petition. Thus, absent equitable tolling petitioner's claims that he received ineffective assistance of appellate counsel are also time-barred.

Petitioner advances three arguments in support of his contention that he is entitled to equitable tolling of the statute of limitations. First, he contends that his appellate counsel failed to inform him that his conviction had affirmed on appeal in May of 2007 and that he did not learn of that decision until October 19, 2008, when petitioner's wife contacted his appellate counsel to inquire as to the status of the appeal. Petitioner contends, in essence, that the limitation period for the seeking of federal habeas relief should be tolled until the date he learned that his judgment of conviction had been affirmed on appeal.

> Equitable tolling of the habeas corpus statute of limitations applies only "if extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time." [Internal citation omitted.] These extraordinary circumstances must be "the cause of the untimeliness." Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003).

Roy v. Lampert, 465 F.3d 964, 970 (9th Cir. 2006). Equitable tolling is not available based on ordinary negligence of counsel. Spitsyn, 345 F.3d at 800. Only where an "attorney's misconduct is sufficiently egregious" may it "constitute an 'extraordinary circumstance' warranting equitable

1  tolling . . . ." Id.

> "[A] prisoner's lack of knowledge that the state courts have reached a final resolution of his case can provide grounds for equitable tolling if the prisoner has acted diligently in the matter." Woodward v. Williams, 263 F.3d 1135, 1143 (10th Cir.2001) (citing Phillips v. Donnelly, 216 F.3d 508, 511 (5th Cir.), amended in part, 223 F.3d 797 (5th Cir.2000)); see also Diaz v. Kelly, 515 F.3d 149, 155 (2d Cir.2008) (noting that the Fifth, Sixth, Ninth, Tenth, and Eleventh Circuits "have concluded that prolonged delay by a state court in sending notice of a ruling that completes exhaustion of state court remedies can toll the AEDPA limitations period," and citing cases).

Ramirez v. Yates, 571 F.3d 993, 997-98 (9th Cir. 2009).  Equitable tolling is available in these circumstances, however, only where the petitioner "acted diligently to obtain notice" and any delay in notice both "caused" the untimely filing and "made a timely filing impossible." Id. at 998 (citations omitted).

In Spitsyn, the Ninth Circuit held that the misconduct of an attorney who "failed to prepare and file a petition" despite numerous contacts from the petitioner and his mother seeking action, and who failed to return the petitioner's file despite requests to do so was "sufficiently egregious to justify equitable tolling." 345 F.3d at 801.  See also Doe v. Busby, 661 F.3d 1001, 1011-12 (9th Cir. 2011) (equitable tolling was appropriate where petitioner's former attorney failed to file a habeas petition after affirmatively misleading petitioner to believe that it would be filed).  Here, the only failure on the part of his appellate counsel alleged by petitioner is that he did not timely inform petitioner that his conviction had been affirmed on direct appeal. As noted above, this delay in notice will only support equitable tolling if petitioner was diligent in his efforts to, in fact, obtain notice of a decision on his state appeal and if the delay in providing such notice caused the untimeliness of, and made it impossible for him to timely file, the instant federal habeas petition.

In his initial opposition to the pending motion, petitioner states that he met in person with his appellate counsel "[i]n approximately April of 2007 subsequent to [his] release on parole." (Doc. No. 20 at 3.)  At the time, according to petitioner, his appellate counsel told

9

petitioner, inter alia, "that there had not been a ruling in the case and that he would be making oral arguments in the Third Circuit [sic] Court of Appeal." (Id. at 4.)[5] According to petitioner, his appellate counsel at that time did not discuss with petitioner the possibility of filing a petition for review in the California Supreme Court, nor did he discuss the AEDPA statute of limitations or "the possibility of petitioner filing post-conviction collateral challenges." (Id.) Petitioner asked his appellate counsel "how long a ruling in his case could take and counsel replied 'maybe a year or so.'" (Id.) According to petitioner, he left that meeting "believing he would be contacted once there was a decision in his case." (Id.) Petitioner represents that he was returned to custody on a parole violation from June 26, 2007 to December 2, 2007, and was not contacted by his appellate counsel at any point during that period. (Id.) Petitioner was then out of custody until June 9, 2008, when he was returned to custody on another parole violation. (Id. at 5.) In September 2008, petitioner was transferred to the Sacramento County Main Jail, where he visited the law library and began to research the state appellate court process. (Id.) At that point, he also learned about the AEDPA statute of limitations, and he prepared the habeas petition to file in this court "without his legal file which he believed was still in use by his appellate counsel who he believed was still doing whatever it was that appellate counsels did." (Id.) In approximately October of 2008, to aid in filling out the state form habeas corpus petition, petitioner finally asked his wife to contact his appellate counsel. (Id. at 5-6.) It was then that petitioner learned that there had been a decision on his direct appeal rendered in approximately May of 2007. It appears that petitioner's appellate counsel responded promptly to the October 2008 inquiry from petitioner's wife and that counsel also packed up "a 'ton of materials'" for petitioner's wife to pick up. Id.

---

[5] Review of the state appellate court's docket on petitioner's direct appeal shows that on April 9, 2007, that court sent to the parties an "oral argument waiver notice", and that on May 11, 2007, the appeal was "submitted after approval of argument waiver." (Docket in People v. Witkin, Case Number C051629, in the records of the California Court of Appeal for the Third Appellate District.) This court may take judicial notice of court records. See MGIC Indem. Co. v. Weisman, 803 F.2d 500, 505 (9th Cir. 1986); United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980).

1       Petitioner has tendered no explanation for his failure to contact his appellate
2 attorney at any point during the eighteen months between their April 2007 meeting and his wife's
3 October 2008 inquiry, beyond his assertion that he expected that his counsel would contact him
4 when the appeal was decided.  It is clear that petitioner had the ability to, and did, seek
5 information from his appellate attorney.  It is also clear that petitioner was out of custody for
6 approximately nine months of the period between April 2007 and June 2008.  Nonetheless, there
7 is no evidence before the court that petitioner communicated at all with his appellate attorney
8 during this period, nor is there any evidence before this court suggesting that he was precluded
9 from doing so.  This court finds that the alleged failure of petitioner's appellate counsel to inform
10 petitioner that his conviction had been affirmed on appeal was not more than ordinary
11 negligence.  This court also finds that by letting eighteen months lapse without communicating
12 with his appellate attorney, petitioner failed to act diligently to seek information regarding the
13 status of his direct appeal.  For these reasons, petitioner is not entitled to equitable tolling of the
14 statute of limitations based on his appellate counsel's alleged failure to inform him of the
15 decision on his direct appeal. See Aguilera-Guerra v. Ryan, No. CV-12-258-PHX-NVW (BSB),
16 2012 WL 6765589, at *4 (D. Az. Dec. 7, 2012) (Rejecting equitable tolling where "there is no
17 evidence that Petitioner acted diligently to determine the status of his post-conviction
18 proceeding.") (and cases cited therein); Callahan v. McEwen, No. CV 10-09547-RGK (VBK),
19 2011 WL 6985880, at *6 (C.D. Cal. Sept. 22, 2011) (Petitioner not entitled to equitable tolling
20 where he "failed to set forth sufficient facts to show that he acted diligently to obtain notice" of
21 the denial of his petition for review from his appointed appellate counsel); Johnson v. Martel,
22 No. CIV-S-10-0178 WBS CMK (TEMP) P, 2011 WL 121683, at *7 (E.D. Cal. Jan. 13, 2011)
23 ("Waiting two years following the filing of a petition to determine whether it has been decided
24 cannot be deemed diligent.")

25      Petitioner also contends that the limitation period for the filing of his federal
26 petition should be tolled until September 21, 2009 due to delays he experienced in receiving his

11

legal materials, and delays in learning about relevant principles of law.  To the extent that the delays in receiving his legal materials are attributable to petitioner's lack of diligence in communicating with his appellate attorney, for the reasons set forth above, those delays do not support equitable tolling.  In addition, the record reflects that additional delays petitioner experienced in receiving his legal material from his counsel were based on decisions he made about where to have those materials sent and were not beyond his control.  Specifically, petitioner concedes that it was his decision to have his wife take possession of his legal files from his appellate counsel rather than electing to have those materials sent to him at his place of incarceration. (See Doc. No. 20 at 6-7.)  Finally, petitioner's lack of knowledge of the law, including the AEDPA statute of limitations, is clearly not an extraordinary circumstance that justifies equitable tolling.  See Ford v. Pliler, 590 F.3d 782, 789 (9th Cir. 2009); Raspberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006) ("pro se petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling.")

    Petitioner also contends that he is entitled to equitable tolling of the statute of limitations because he is actually innocent of his commitment offense.  "[A] credible claim of actual innocence constitutes an equitable exception to AEDPA's limitations period, and a petition who makes such a showing may pass through the Schlup[6] gateway and have his otherwise time-barred claims heard on the merits." Lee v. Lampert, 653 F.3d 929, 932 (9th Cir. 2011).  In order to obtain equitable tolling on this ground, however, petitioner must demonstrate "that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt." Id. at 937.  "Actual innocence means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998).

> Schlup requires a petitioner "to support his allegations of constitutional error with new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial."

---

[6] Schlup v. Delo, 513 U.S. 298 (1995).

Schlup, 513 U.S. at 324, 115 S. Ct. 851.  The habeas court then "consider[s] all the evidence, old and new, incriminating and exculpatory," admissible at trial or not.  House, 547 U.S. at 538, 126 S. Ct. 2064 (internal quotation marks omitted); Carriger, 132 F.3d at 477–78.  On this complete record, the court makes a " 'probabilistic determination about what reasonable, properly instructed jurors would do.' " House, 547 U.S. at 538, 126 S. Ct. 2064 (quoting Schlup, 513 U.S. at 329, 115 S. Ct. 851).

Lampert, 653 F.3d at 938.

The facts established by evidence admitted at petitioner's trial and  as summarized by the state appellate court on direct appeal, were as follows:

> About 4:00 a.m. on August 21, 2004, Sacramento County Deputy Sheriff Robert Barnes waited in his Elk Grove police patrol car at a red light and saw a Cadillac speed by at 80 miles per hour. Deputy Barnes followed the car which continued at a high rate of speed.  The car made a rapid lane change from the far right lane to the far left lane and then turned left.  After making another turn, the car swerved across the road and stopped with half the car in a driveway and the other half across the sidewalk.  Deputy Barnes called dispatch. [Petitioner], the driver of the car, jumped out of the car.  From 30 feet away, Deputy Barnes yelled, "Stop, police. Come here." [Petitioner] looked at the officer and then ran towards a residence.  At the door, [petitioner] stood with his back to the officer who was in pursuit.  The deputy yelled at [petitioner] to stop.  The deputy could not see [petitioner]'s hands.  With a flashlight in his hand, the deputy grabbed [petitioner].  The door opened and the two fell inside, onto the entryway.  During a struggle on the floor, Deputy Barnes felt [petitioner] pulling on the deputy's radio and gun.  [Petitioner] then grabbed something off the floor and headed to the door.  Deputy Barnes pulled [petitioner]'s shirt and the two struggled through the front door to the lawn.  [Petitioner] got away and ran to his car, looking at the deputy.  The deputy could not see [petitioner]'s hands which were near his waistband.  Believing [petitioner] was reaching for a weapon, Deputy Barnes pulled out his gun and shot five times at [petitioner] who ran away.
>
> [Petitioner]'s brother called 911 to say that [petitioner] had reentered the residence where he had struggled with Deputy Barnes. [Petitioner] lived there.  Other officers arrived.  About two hours later when [petitioner] surrendered, [petitioner] kept his hands in front of him, not visible to the officers, shouted expletives, stared at the officers and demanded to know who shot him.  At the hospital, [petitioner] was treated for bullet wounds to his chest and hip.

/////

> Inside [petitioner]'s residence, officers found Deputy Barnes's flashlight, a mini audio recorder and handcuff keys.

(Lodged Document 2, People v. Witkin, No. C051629, slip op. at 2-3.)

In claiming his actual innocence as a basis for equitable tolling, petitioner's contention is, in essence, that criminal charges were filed against him only to cover up violations of his constitutional rights by Sheriff's Deputy Barnes. (See Supplemental Opposition, filed January 25, 2012 (Doc. No. 58), at 1.) In support of his claim of actual innocence, petitioner has presented the following evidence: A one page sheet of call records from the Sacramento Police Department for the morning of August 21, 2004; police reports prepared by officers who responded to police radio calls in connection with the August 21, 2004 incident; a Sacramento Fire Department incident report of medical service provided on August 21, 2004 at 4:46 a.m.; a mailroom record from Deuel Vocational Institution; a page from petitioner's state habeas petition filed in the California Supreme Court; documents from petitioner's prison mental health file[7]; the transcript of a deposition of Deputy Barnes taken in a civil rights action brought by petitioner in this court[8]; and a transcript of the testimony of attorney Jeff Kravitz given in the Sacramento County Superior Court on petitioner's motion for a new trial . (See Attachments to Supplemental Opposition (Doc. No. 58) at 43-184.) In claiming his actual innocence, and therefore an entitlement to equitable tolling, petitioner also relies on the following evidence appended to his

---

[7] These records reflect notations by prison and/or jail medical staff made between October of 2007 through June of 2010 suggesting that petitioner appeared anxious and stressed but coherent, met the criteria for Post-Traumatic Stress Disorder but was stable, had been referred to a psychiatrist and was being educated regarding strategies for better dealing with stress and incarceration, including breathing and relaxation exercises. (Doc. No. 58 at 59-63.) Petitioner's references in this regard are insufficient to meet his burden of establishing that a mental impairment made it impossible for him to timely seek federal habeas relief. See Bills v. Clark, 628 F.3d 1092, 1100 (9th Cir. 2010). It does not appear that petitioner is so claiming but, in any event, his frequent and voluminous pro se filing in this court would belie any such contention.

[8] In Case No. 2:05-cv-1662 MCE DAD P summary judgment was granted in favor of the defendants with respect to petitioner's excessive use of force and deliberate indifference claims brought in that civil rights action. (See Doc. No. 56)

14

petition for federal habeas relief:

    1. An engineer's report measuring the distance between petitioner's vehicle and Deputy Barnes' vehicle;

    2. Evidence corroborating Deputy Barnes' testimony that he never activated the overhead lights on his vehicle;

    3. Evidence that Deputy Barnes' headlights and parking lights were not illuminated;

    4. "Evidence regarding Petitioner's habitual manner of parking." (Doc. No. 59 at 5.)[9]

    5. "Evidence undercutting the reliability of the photographs of the officer's parked vehicle." (Id.)

    6. "Evidence that Deputy Barnes used the element of surprise to make contact with the Petitioner." (Id.)

    7. "Evidence that 12 witnesses never heard any purported utterances from the officer." (Id.)

    8. Evidence that Deputy Barnes, a former college football player, was "sprinting" when he hit petitioner from behind. (Id.)

    9. "The significance of the evidence of Petitioner's actions just prior to being struck." (Id. at 6.)

    10. Evidence that Deputy Barnes "cut Petitioner's right eye with his flashlight barrel." (Id.)

    11. Evidence that equipment belonging to Deputy Barnes found in petitioner's residence was planted.

    12. Evidence that Deputy Barnes described petitioner "as a BMA with dreadlocks." (Id. at 6.)

    13. Evidence that Deputy Barnes "had no idea what Petitioner was wearing." (Id. at 6.)

    14. Evidence of the absence of grass stains or dirt on petitioner's pants, that would have impeached Deputy Barnes' testimony that he and petitioner struggled in the grass.

---

[9] In his "amendment to supplemental opposition" filed in connection with the pending motion, petitioner listed all of the allegedly exculpatory evidence that was not presented at his trial with citations to the supporting documents attached to the habeas petition he has filed with this court. (See Doc. No. 5-7.) It is petitioner's characterization of that purported evidence in his amendment to his supplemental opposition that is quoted here.

15

15. Evidence that Deputy Barnes perjured himself when describing his injuries.

16. Evidence that Deputy Barnes shot petitioner "6-8 seconds after hitting him from behind." (Id.)

17. Evidence from prior victims of excessive use of force by Deputy Barnes.

18. Forensic evidence of the shooting.

19. Evidence that Deputy Barnes apologized immediately after the shooting.

20. "The audio tape of Petitioner's dying declaration/spontaneous utterances." (Id.)

21. Videotape of petitioner's exit from his residence[10];

22. "Evidence that Petitioner did not direct tirades of profanity at officers or make any utterances." (Id. at 7.)

23. "Evidence that Petitioner was unconscious in the ambulance and not directing tirades of profanity at paramedics." (Id.)

24. Evidence that Officer Chipp never had a report;

25. Evidence of petitioner's injuries.

(Doc. No. 59 (Amendment to Supplemental Opposition), at 5-7.)

The evidence on which petitioner relies in support of his argument does not meet the exacting standard governing the application of equitable tolling to a claim of actual innocence. Lee, 653 F.3d at 938 (To justify equitable tolling a petitioner must come forward with new reliable evidence which if presented "it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt."); Stephens v. Herrera, 464 F.3d 895, 898 (9th Cir. 2006). Petitioner's arguments center on the legal sufficiency of the evidence supporting his conviction, rather than his factual innocence based upon new evidence. Cf. Bousley, 523 U.S. at 623. Accordingly, this court finds that petitioner is not entitled to equitable

---

[10] These videotapes are alleged to be in the possession of petitioner's parents and have not been tendered to the court in this action.

tolling of the statute of limitations based on his claim that he is actually innocent of the crime for which he was convicted.

CONCLUSION

For all of the foregoing reasons, this action is time-barred and respondents' motion to dismiss should therefore be granted.

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, "[t]he district court must issue or a deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, 28 U.S.C. foll. § 2254. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The court must either issue a certificate of appealability indicating which issues satisfy the required showing or must state the reasons why such a certificate should not issue. Fed. R. App. P. 22(b). Where a petition is dismissed on procedural grounds, a certificate of appealability "should issue if the prisoner can show: (1) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling'; and (2) 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right.'" Morris v. Woodford, 229 F.3d 775, 780 (9th Cir. 2000) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)).

For the reasons set forth in these findings and recommendations, no jurist of reason would find it debatable whether this action is time-barred. Accordingly, no certificate of appealability should issue.

In accordance with the above, IT IS HEREBY ORDERED that petitioner's July 5, 2012 motion to admit state court record (Doc. No. 66) is denied; and

IT IS HEREBY RECOMMENDED that

1. Respondent's August 16, 2010 motion to dismiss (Doc. No. 18) be granted;

2. This action be dismissed as barred by the applicable statute of limitations; and

3. The district court decline to issue a certificate of appealability.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 29, 2013.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:12
witk10cv0091.mtd3rev